IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

ANDREW SHANNON,

> Plaintiff,

v.

COMMONWEALTH OF VIRGINIA
DEPARTMENT OF JUVENILE JUSTICE,

> Defendant.

Civil Action Number 3:06CV413

## MEMORANDUM OPINION

THIS MATTER comes before the Court on Defendant, Commonwealth of Virginia Department of Juvenile Justice's Motion for Summary Judgment. For the reasons expressed below, Defendant's Motion is hereby GRANTED.

### I

Andrew Shannon ("Shannon"), a former employee of Commonwealth of Virginia Department of Juvenile Justice ("DJJ"), filed an Amended Complaint alleging discrimination on the basis of race and gender, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e and 42 U.S.C. § 1981. Shannon further alleges that DJJ retaliated against him for opposing discrimination and filing a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") in violation of Title VII, 42 U.S.C. § 2000e-3(a). DJJ has moved for summary judgment pursuant to Fed. R. Civ. P. 56(b) and (c). After briefing by the parties, only one issue remains: whether Shannon has established a prima facie case of retaliation.

A motion for summary judgment lies only where "there is no genuine issue as to any material fact" and where "the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  The Court must view the facts and the inferences drawn therefrom in the light most favorable to the party opposing the motion.  Ballinger v. North Carolina Agric. Extension Serv., 815 F.2d 1001, 1004 (4th Cir. 1987).  While viewing the facts in such a manner, courts look to the affidavits or other specific facts to determine whether a triable issue exists.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  Summary judgment is not "a disfavored procedural shortcut," but an important mechanism for weeding out "claims and defenses [that] have no factual basis."  Celotex, 477 U.S. at 327.  "Where no genuine issue of material fact exists," it is the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial."  Drewitt v. Pratt, 999 F.2d 774, 778–79 (4th Cir. 1993) (internal quotation marks omitted).

## II

Title VII of the Civil Rights Act of 1964 forbids employment discrimination based on "race, color, religion, sex, or national origin," 42 U.S.C. § 2000e-2(a), and its anti-retaliation provision forbids discrimination against an employee or job applicant who, *inter alia*, has "made a charge, testified, assisted, or participated in" a Title VII proceeding or investigation.  Id. at § 2000e-3(a).  To establish a prima facie case of retaliation, Shannon must show that (1) he engaged in a protected activity; (2) DJJ took an adverse employment action against him; and (3) a causal connection existed between the protected activity and the asserted adverse action.  Thompson v. Potomac Elec. Power Co., 312 F.3d 645, 650 (4th Cir. 2002).

On August 20, 2005, as a consequence of his belief that DJJ had discriminated against him on the basis of race and gender, Shannon filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC").  On September 21, 2005, he informed his supervisor Marilyn DiPaolo ("DiPaolo") that he had filed the charge.  He further alleges that subsequent to his charge of discrimination, he was subject to several retaliatory actions. Accordingly, on February 22, 2006, he filed a second charge with the EEOC alleging retaliation.

DJJ, in its Motion, argues that the retaliation claim fails because Shannon cannot show that the actions he characterizes as "retaliatory" were "materially adverse."  The purpose of the anti-retaliation provision is "to prevent employer interference with unfettered access to Title VII's remedial mechanisms . . . by prohibiting employer actions that are likely to deter victims of discrimination from complaining to the EEOC, the courts, and their employers." Burlington Northern & Santa Fe Ry. Co. v. White, 126 S. Ct. 2405, 2415 (2006) (internal citation and quotation marks omitted).  "[P]etty slights, minor annoyances, and simple lack of good manners will not create such deterrence." Id.  Moreover, noted the Court, "personality conflicts at work that generate antipathy and snubbing by supervisors and co-workers are not actionable." Id. (internal quotation marks omitted).  The Court emphasized that context and the particular circumstances of any given act of retaliation are to be considered in applying the standard set forth. Id.  That standard is an objective one.  A "plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Id. at 2411 (internal quotation marks omitted).  Below are the allegedly retaliatory actions followed by DJJ's response.

Removal From Employee Directory:  Shannon alleges that his name was removed from the Employee Directory/Roster on the Agency website, thereby limiting his ability to perform his job.  DJJ responds that the employee directory was located in the agency's internal, intranet system, and was not available to the general public on the agency website.  Because it became apparent that the normal workload of the human resources section did not allow time for the routine and timely updating of the directory, it was removed from the intranet system in 2006.  With respect to Shannon, DJJ has no knowledge of whether he was listed in the employee directory at any given point in time, nor does it have any knowledge of any decision made or action taken to remove Shannon's name from this directory.  Accordingly, argues DJJ, Shannon has failed to show how the absence of his name from an internal DJJ website limited him in doing his job, since his ability to access and utilize this website in the performance of his duties remained unaffected.

Opened Mail:  Shannon alleges that contrary to the prior practice of DJJ, his work-related mail was opened by DJJ staff prior to his receipt of the mail.  DJJ maintains that no specific policies or procedures exist that deal with opening employees' mail.  After investigating this claim, DJJ determined that one piece of mail addressed to Shannon was opened.  DJJ Director Barry R. Green also addressed this mail policy during his deposition and confirmed that even some of his mail is opened.

Removal from Hampton Office:  In spite of the fact that his job involved statewide responsibilities, primarily in the Hampton Roads area, Shannon alleges that he was removed from the Hampton Office.  DJJ contends that Shannon was never assigned to the Hampton office.

4

In fact, during his deposition, Shannon acknowledged that he was assigned to the Central Office and reported to Bruce Twyman at that location.

False Statements:  Shannon alleges that false statements made by the Director of Human Resources disqualified him from receiving income replacement during his absence on short-term disability.  Specifically, a letter from UNUM Provident denying Shannon's application stated that his supervisor counseled him about "not walking around," and the following day he was out on short-term disability.  DJJ responds that UNUM Provident is the Commonwealth's third-party administration for short-term disability benefits and DJJ has no control over decisions with respect to disability benefits.  As for the comment made, Tyrone Jackson, the person to whom the comment was attributed, sent a letter to UNUM Provident and chastised them for incorrectly stating his comment.  He stressed that he "at no time stated Mr. Shannon was counseled about 'not walking around.'"  Further, Shannon's disability claim was denied for lack of "medical documentation," not because of actions by DJJ.  UNUM informed Shannon of his right to appeal its determination, which he did.  In January 2006, UNUM upheld its previous determination that Shannon's alleged disability was not supported by medical documentation.

Removal of Name Plate:  Shannon alleges that his name plate was removed from his office door.  DJJ responds that it investigated the issue and has no evidence that Shannon's name plate was removed from his door at DJJ.

Closed Email Account:  Shannon alleges that his e-mail box was closed, which adversely affected his ability to perform his job.  DJJ maintains that on September 7, 2005, Shannon was advised by Virginia Information and Technology Agency ("VITA") that he would not be able to receive email beginning September 8, 2005 because he, and 21 other DJJ employees, had

5

exceeded the mailbox size limit.  VITA is not an agency under DJJ, but is instead a separate state

agency that manages computer systems for all Virginia agencies.

Transfer to New Position:  Shannon alleges that he was transferred to an entirely different

position, for which he had no training or experience.  After six weeks in the position, his

performance was criticized in a less than satisfactory interim evaluation, and he was placed on

probation.  DJJ responds that the decision to transfer Shannon to the Community Intervention

Gang Unit was a business decision.  Former human resource director Tyrone Jackson testified

that Judge Jerrauld C. Jones, former Director of DJJ, thought Shannon would be a better

personnel fit for the Gang Unit than Community Relations.  Director Jones testified in his

deposition that the Community Relations position Shannon was in was did not produce the

results that he envisioned due to Shannon's own conduct.  Shannon was reassigned because

Director Jones was not satisfied with the results of the Community Connections initiative.

Accordingly, argues DJJ, a legitimate business decision was made to transfer Shannon to the

Community Intervention Gang Unit.  The reassignment did not involve any loss of pay or status.

Although Shannon's interim evaluation may have been "less than satisfactory" to him, it did not

state that his performance was unsatisfactory from the agency's perspective.  It stated only the

following expectations: (1) that he read and respond to emails on a daily basis, (2) that he ask

questions about assignments in a timely manner, (3) that he submit time sheets each Monday, and

(4) that he discuss work issues with his supervisor orally rather than in writing.  These are

reasonable expectations.  There is no mention of "probation" in the evaluation, nor is such a

status provided for under state or agency policy.  Moreover, in the interim evaluation DiPaolo

stated that there was a need for Shannon to take gang-related training, and she subsequently

6

approved his attendance at six gang-related training classes.  He attended three of these, and the remainder were scheduled for dates after the effective date of his resignation.

Monitoring of Activities:  Shannon alleges that he was subject to scrutiny and surveillance to which other employees were not subjected.  His leave requests were questioned in spite of the fact that he had sufficient leave.  His supervisor, DiPaolo, would call to monitor his activities without identifying herself.  His comings and goings were monitored, i.e, in the garage deck, on the street, while entering and exiting the office, in restaurants, and even in public restrooms.  He was expected to limit lunch breaks, while other employees were allowed to come and go with impunity.  In response, DJJ argues that as Shannon's supervisor, DiPaolo had the responsibility to know where he was during work hours and how he was performing his job.  Moreover, between August 20, 2005, and his resignation on October 11, 2006, DJJ approved a total of 375.50 hours of annual, sick, family and personal, administrative, and community service leave requested by Shannon.

Unfriendly Treatment by Co-workers:  Shannon alleges that employees of DJJ changed their interactions with him, i.e., they treated him hostilely, they failed to provide him with assistance, and were resistant in assisting him with the community volunteer program for which he was responsible.  DJJ responds that Shannon failed to raise this issue prior to his Memorandum in Opposition.  However, even if fellow employees treated him differently, Shannon has failed to put forth facts that DJJ management personnel acted in an unlawful manner towards him after his EEOC charges were filed.  Moreover, under Supreme Court precedent, this claim is not actionable.

**III**

After reviewing Shannon's allegations and the responses submitted by DJJ, the Court finds that Shannon has not shown that DJJ's allegedly retaliatory actions were materially adverse such that a reasonable employee in his situation would have been dissuaded from pursuing a claim of discrimination. The bulk of the alleged retaliatory actions (i.e., removal from employee directory, opened mail, removal of nameplate, closed email account, monitoring, and unfriendly treatment by co-workers) fall into the "petty slights" and "minor annoyances" category.

The remaining allegations (i.e., transfer from Hampton Office, false statements, and transfer to the Gang Unit) do not cross the "materially adverse" threshold. First, there is no evidence that Shannon was ever assigned to the Hampton Office. He admittedly worked there fairly often, but unlike his assignment to the Central Office, there is no agency record of an official assignment to that office. Second, as for the false statement made to UNUM Provident, Tyrone Jackson, the person to whom the comment was attributed, sent a letter chastising UNUM Provident for incorrectly stating his comment. In his letter, Jackson stressed that he "at no time stated Mr. Shannon was counseled about 'not walking around.'" In any event, Shannon's disability claim was denied, initially and on appeal, for lack of "medical documentation." Finally, DJJ has put forth a legitimate business reason for transferring Shannon to the Gang Unit, and this transfer did not affect Shannon's salary or benefits. "[R]eassignment of job duties is not automatically actionable." Burlington, 126 S. Ct. at 2417. The Court finds that "a reasonable person in [Shannon's] position, considering all the circumstances" would not consider this reassignment materially adverse. Id. (internal quotation marks omitted).

8

**IV**

Because Shannon fails to establish a prima facie case of retaliation, the Court GRANTS

DJJ's Motion for Summary Judgment.  An appropriate Final Order shall issue.


_____/s/_____
James R. Spencer
CHIEF UNITED STATES DISTRICT JUDGE


Entered this <u>4th</u> day of April 2007